# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

|  |  |
|---|---|
| ELBERT H. COOK JR. AND GENE-VIEVE L. HARDY, BOTH INDIVIDU-ALLY AND AS TRUSTEES OF THE NINA L. COOK REVOCABLE TRUST DATED MAY 11, 1998,<br><br>    *Plaintiffs,*<br><br>v.<br><br>LARRY E. LUCCO,<br><br>    *Defendant.* | No. 4:24-cv-882-MAL |

## MEMORANDUM AND ORDER

Before the Court is Defendant Larry E. Lucco's motion to dismiss Plaintiffs Elbert H. Cook Jr. and Genevieve L. Hardy's Second Amended Complaint. (Doc. 71). After careful consideration, the Court **GRANTS in part** and **DENIES in part** Lucco's motion.

### Background[1]

Plaintiffs Elbert H. Cook, Jr. and Genevieve L. Hardy are Nina Cook's children and trustees of the Nina L. Cook Revocable Trust dated May 11, 1998 (the "Trust"). (Doc. 67 ¶¶ 2–4). For many years, Defendant Larry E. Lucco served as a financial advisor to Nina Cook and the Trust. (*Id.* at ¶ 6). He also served as a financial advisor to Plaintiffs, both individually and as co-trustees of the Trust. (*Id.*). Plaintiffs allege

---

[1] On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable[.]" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

that during that time Lucco "bilked" them, their mother, and the Trust out of millions of dollars. (*Id.* at ¶ 1).

Lucco had complete control over Plaintiffs' and Nina Cook's assets and investments. (*Id.* at ¶ 11–12). With that control, from the years 2000–2010, Lucco developed a practice of purchasing multiple insurance policies on the life of Nina Cook, taking large commissions with each purchase. (*Id.* at ¶¶ 1, 15). Then he would sell those policies (or let them lapse) before purchasing new policies and taking even more commissions. (*Id.* at ¶ 1, 16–21). Plaintiffs allege that these transactions were "unsuitable for Nina Cook based on her age, annual income, financial situation and needs, financial objectives, intended uses, existing assets, liquid net worth, and/or tax status." (*Id.* at ¶ 25). As Plaintiffs explain, "[u]niversal life insurance is initially cheaper but becomes more expensive each year as the cost of the life insurance is recalculated annually. Buying new policies on the life of Nina Cook after selling earlier policies issued when she was younger on the secondary market or as replacement policies can only be seen as commission-generating recommendations that are not only unsuitable, but fraudulent." (*Id.*).

In 2016, Lucco was suspended as a registered representative/associated person from the Financial Industry Regulatory Authority. (*Id.* at ¶¶ 5, 14). Lucco never told Plaintiffs about the suspension and continued to direct all the activity in Plaintiffs' and the Trust's financial accounts. (*Id.* at ¶ 14).

Nina Cook passed away in 2020. (*Id.* at ¶ 2). Before then, Lucco allowed two insurance policies on her life to lapse in 2016 and 2018. (*Id.* at ¶¶ 20–21). But he never disclosed that to Plaintiffs. (*Id.* at ¶ 27). Instead, Lucco "confirmed in email [after Nina Cook's passing] to Plaintiffs' … that Plaintiffs were the 'owners and beneficiaries of two [life insurance] policies,' referring to the" policies that had already lapsed. (*Id.* at ¶ 29). "Lucco even represented to [Plaintiff Hardy] in a tape-recorded meeting on July 28, 2023, that the death proceeds of [the lapsed policies] had been received and that they were invested and earning four percent (4%) interest." (*Id.* at ¶ 30). Lucco's conduct was not discovered by Plaintiffs until 2023. (*Id.* at ¶ 27).

2

After discovering Lucco's conduct, Plaintiffs initially sued Kestra Investment Services, LLC, the successor in interest to an investment services company of which Lucco was a registered representative. (Doc. 1-1 at 3, 4). Plaintiffs then amended their complaint and joined Lucco to the lawsuit as a defendant on March 27, 2025, before voluntarily dismissing Kestra as a defendant. (Docs. 45, 48). After Lucco moved to dismiss, Plaintiffs filed their Second Amended Complaint, which alleges (1) civil liability under Mo. Rev. Stat. § 409.5-509; (2) common law intentional misrepresentation; (3) negligent misrepresentation; and (4) breach of fiduciary duty. (Doc. 57; Doc. 67 at pp. 8, 10, 12, 14). Lucco again moves to dismiss. (Doc. 71).

## Legal Standard

In assessing Lucco's motion to dismiss, the Court construes the complaint in the light most favorable to Plaintiffs and determines whether it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 679. Determining what is plausible is "a context-specific task" that requires the Court "to draw on its judicial experience and common sense." *Id.*

## Analysis

Lucco moves to dismiss Plaintiffs' complaint under Federal Rule of Civil Procedure 12(b). (Doc. 71 at 1). His motion comes in three parts. First, Lucco moves to dismiss all four counts of Plaintiffs' complaint as barred by their respective statutes of limitation. (*Id.* at ¶ 3). Second, Lucco argues Plaintiffs did not plead with particularity the circumstances constituting fraud, as required by Fed. R. Civ. P. 9(b). (*Id.* at ¶ 4; Doc. 72 at p. 12). Third, Lucco challenges Plaintiffs' standing to sue. (Doc. 71 at ¶ 5; Doc. 72 at p. 16). The Court addresses each part in turn.

### I. Statute of Limitations

"As a general rule, the possible existence of a statute of limitations defense is not ordinarily a ground for Rule 12(b)(6) dismissal unless the complaint itself establishes the defense." *Joyce v. Armstrong Teasdale, LLP*, 635 F.3d 364, 367 (8th Cir.

3

2011) (quotation omitted).  Applying this standard, the Court addresses the timeliness of each count.

## A.  Count I is partly barred by the statute of limitations.

Count I asserts a claim for relief under Mo. Rev. Stat. § 409.5-509(f), which provides that:

> A person that receives directly or indirectly any consideration for providing investment advice to another person and that employs a device, scheme, or artifice to defraud the other person or engages in an act, practice, or course of business that operates or would operate as a fraud or deceit on the other person is liable to the other person.

Mo. Rev. Stat. § 409.5-09(f).  Plaintiffs allege that Lucco is liable under this provision for providing fraudulent investment advice to purchase unsuitable life insurance policies, (Doc. 67 at ¶ 36), concealing the subsequent lapse of those life insurance policies, (*Id.* at ¶¶ 37–40), and concealing his suspension from FINRA (*Id.* at ¶ 41).

### 1.  Relief under § 409.5-509(f) for Lucco's pre-2020 conduct is time-barred.

Lucco argues Count I is time-barred because it was not brought within five years of the violations on which it is based.  (Doc. 72 at 4–6).  The applicable statute of limitations provides that "[a] person may not obtain relief … under [Mo. Rev. Stat. § 409.5-509(f)], unless the action is instituted within the earlier of two years after discovery of the facts constituting the violation or *five years after the violation*."  Mo. Rev. Stat. § 409.5–509(j)(2) (emphasis added).  That means the latest a claim under § 409.5-509(f) can be brought is within five years of the violation for which relief is sought.  Because this action was brought against Lucco on March 27, 2025, this claim can only seek relief for violations that occurred on March 27, 2020, or later.  The statute of limitations bars claims for violations that occurred before that date.

Lucco is correct that some of the alleged violations fall outside of the five-year limitations window.  Plaintiffs' allegations that Lucco provided fraudulent investment advice in 2010, (Doc. 67 at ¶¶ 20–21), failed to disclose his suspension from the FINRA in 2016, (*Id.* at ¶ 41), and allowed two life insurance policies to lapse in 2016 and 2018 without disclosure, (*Id.* at ¶¶ 37, 20–21), fall into this time-barred bucket

4

of claims. To the extent Count I seeks relief for these violations, it is barred by the statute of limitations.

But Count I also seeks relief for alleged violations within the limitations window. Plaintiffs' allegations that Lucco deceitfully concealed the lapse of two insurance policies on the life of Nina Cook by requesting her death certificate sometime in 2020, (*Id.* at ¶ 38); emailing on September 16, 2020 a statement that Plaintiffs were the "owners and beneficiaries" of the then-lapsed life insurance policies, (*Id.* at ¶¶ 29, 39); and representing in a tape-recorded meeting in 2023 that the death proceeds of the lapsed life insurance policies were received, invested, and earning four percent interest, (*Id.* at ¶ 40); all fall into this bucket of claims. On the face of the complaint, these allegations fall within the applicable limitations period for claims under § 409.5-509(f). Thus, to the extent Count I seeks relief for these violations, it is timely.

Therefore, relief for Lucco's pre-2020 conduct under § 409.5-509(f) is barred by the applicable statute of limitations. But relief for his conduct in 2020 and beyond is not.

### 2. Both parties' arguments to the contrary are unpersuasive.

Plaintiffs argue that all of Count I is timely because it asserts one continuous tort that did not end until 2023. (Doc. 73 at 4–5). As such, Plaintiffs claim the statute of limitations did not begin to run for any of their claims until 2023. (*Id.*) But the continuous-tort rule does not apply here.

Plaintiffs cite *Davis v. Laclede Gas Co.*, 603 S.W.2d 554, 556 (Mo. 1980), for the proposition that, "Missouri recognizes a 'continuing tort' exception to statutes of limitations." (Doc. 73 at 4). But *Davis* interpreted only the text of Mo. Rev. Stat. § 516.100—Missouri's general statute of limitations—not ***all*** statutes of limitation. *See Davis*, 603 S.W.2d at 556. Plaintiffs point to no authority adopting the continuing tort theory when applying § 409.5-509(j)(2), the statute of limitations at issue here. And, when given the opportunity, the Missouri Supreme Court has refused to extend *Davis's* continuing tort exception outside the confines of § 516.100's unique language. *See, e.g., Weiss v. Rojanasathit*, 975 S.W.2d 113, 119 (Mo. 1998) (declining to apply

the continuing tort exception to § 516.105's statute of limitations for medical malpractice cases).

The Missouri Supreme Court is unlikely to recognize the exception here. [2] As the Missouri Supreme Court has explained, "[t]he [continuous tort] theory adopted in cases like *Davis* provides that the tort 'continues' under section 516.100 because new or subsequent injuries or damages from the underlying tort develop, and under section 516.100, the ascertainment of the damage resulting from the wrong commences the running of the limitations period." *Weiss*, 975 S.W.2d at 119. Thus, the continuing-tort exception recognized in *Davis* does not apply to statutes of limitation that do not begin to run upon *ascertainment of damage* resulting from the wrong. *See id.* Here, § 409.5–509(j)(2)'s statute of limitations simply begins to run "after the violation," not upon the ascertainment of the damage resulting from the wrong. Therefore, "continuing or subsequently developing damages or injuries do not start the running of" § 409.5-509(j)(2), and "the continuing tort theory as stated in *Davis* does not apply to" claims under § 409.5-509(j)(2). *Weiss*, 975 S.W.2d at 119. The plain language of § 409.5-509(j)(2) mandates that the action be brought within "five years after the *violation*." Mo. Rev. Stat. § 409.5-509(j)(2) (emphasis added).

As for Lucco, he seems to argue that Plaintiffs' claims concerning Lucco's conduct in 2020–2023 should be dismissed because they "are solely arguments for fraudulent concealment . . . ." (Doc. 72 at 6). The Court construes this argument as suggesting that Lucco's conduct in 2020–2023 is not actionable under § 409.5-509(f). [3] The Court disagrees.

_____

[2] When sitting in diversity and "applying the substantive law of the forum state," a federal court "must follow decisions of the state's supreme court interpreting the forum's law." *Olmsted Med. Ctr. v. Cont'l Cas. Co.*, 65 F.4th 1005, 1008 (8th Cir. 2023). "However, if a state's supreme court has not spoken on an issue," a federal court "must predict how it would decide the issue." *Id.* (quotation omitted). "To make this prediction," a federal court "may consider relevant state precedent, analogous decisions, considered dicta, and any other reliable data." *Id.* (citation modified).

[3] Lucco also argues that "fraudulent concealment cannot be argued to toll the deadline to file under this statute." (Doc. 72 at 6). But whether concealment tolls the statute of limitations is separate from whether concealment constitutes an actionable violation under the statute.

Lucco points to no authority showing that a financial advisor is not inde-pendently liable under § 409.5-509(f) for engaging in concealment to defraud or de-ceive a client.   Under § 409.5-509(f), a financial advisor "that employs a device, scheme, or artifice to defraud … or engages in an act, practice, or course of business that operates or would operate as a fraud or deceit … is liable to [their client]."  Mo. Rev. Stat. § 409.5-509(f).  Read plainly, this statute makes a financial advisor who engages in acts of concealment that defraud or deceive liable to his clients.

Thus, Count I is dismissed with respect to Plaintiffs' claims concerning Lucco's pre-March 27, 2020 conduct.  But the Court will not dismiss Count I with respect to Plaintiffs' claims concerning Lucco's conduct from March 27, 2020 through the year 2023.

### B.   Count II is partly barred by the statute of limitations.

Count II asserts claims for common law fraud based on the same conduct as Count I.  *Compare* (Doc. 67 at ¶¶ 48–56) *with* (*id.* at ¶¶ 34–47) (alleging the same conduct as grounds for relief).  The statute of limitations for Count II is different than the statute of limitations for Count I.  The statute of limitations for fraud is found in Mo. Rev. Stat. § 516.120(5), which states that a cause of action may be brought "[w]ithin five years" from the date the fraud was discovered "by the aggrieved party, at any time within ten years, of the facts constituting the fraud."  *See Boland v. Saint Luke's Health Sys.,* 588 S.W.3d 879, 882 (Mo. 2019) (stating that under Mo. Rev. Stat. § 516.120(5), "a claim for fraud must be brought within five years from the date…the facts constituting the fraud were discovered or, with reasonable diligence, could have been discovered, but no longer than ten years after [the facts constituting the fraud originally] occurred"); *Dean v. Noble*, 477 S.W.3d 197, 204 (Mo. App. 2015).  "If the fraud is not discovered within ten years," then courts deem the five-year statute of limitations to begin running at that time, meaning that "the cause of action is barred," at the very latest, "fifteen years [after] its commission."  *Dean*, 477 S.W.3d at 204.

Here, Plaintiffs' claims based on Lucco's representations concerning the pur-chase of insurance policies between 2000–2010 are barred by the statute of limita-tions.  The last of these representations that Lucco is alleged to have made was on

7

March 21, 2010, *see* (Doc. 67 at ¶ 21), but this action was not brought against Lucco until March 27, 2025—fifteen years plus a few days later. *See* (Doc. 45). Thus, Count II is barred by the statute of limitations with respect to these claims.[4]

The remainder of Plaintiffs' claims in Count II are timely because they are based on representations alleged to have occurred within fifteen years of when the action against Lucco was brought, with the alleged fraud escaping discovery until 2023. *See* (Doc. 67 at ¶ 41) (failure to disclose suspension from the FINRA in 2016); ¶¶ 20–21 (allowing life insurance policies to lapse in 2016 and 2018 without disclosure); ¶ 38 (requesting insured's death certificate in 2020); ¶ 39 (emailing in 2020 that Plaintiffs were still the "owners and beneficiaries" of the then-lapsed life insurance policies); ¶ 40 (representing in a 2023 tape-recorded meeting that the death proceeds of the lapsed life insurance policies were received, invested, and earning four percent interest).

## C.   The Rest of Count II Fails to State a Claim

Apparently conceding that the claims based on events in 2016 and beyond are timely, Lucco argues that some of these claims should be dismissed for a different reason—lack of harm. Specifically, rather than argue that claims of alleged misrepresentations concealing the lapse of certain life insurance policies in 2020 and 2023 are barred by the statute of limitations, Lucco argues that those misrepresentations cannot be the basis for a fraud claim because they happened after the insured passed away, so nothing could have been done to alter the policies. (Doc. 72 at 6).[5]

Under Missouri law, to state a claim for common law fraud, Plaintiffs must establish the "consequent and proximately caused injury" from the alleged

---

[4] Plaintiffs' continuing tort argument, (Doc. 73 at 6), fails here for the same reasons provided in Part I.A.2.

[5] In his reply, Lucco also argues that these claims should be dismissed because Plaintiffs have not alleged facts establishing the elements of fraudulent concealment. (Doc. 74 at 6). But this argument was not raised in the initial memorandum in support of the motion to dismiss. (Docs. 71, 72). Courts routinely decline to consider such arguments. *See, e.g.*, *Navarijo-Barrios v. Ashcroft*, 322 F.3d 561, 564 n.1 (8th Cir. 2003) ("It is well settled that we do not consider arguments raised for the first time in a reply brief."). Doing so would conflict with this Court's local rules requiring movants to include in the initial memorandum "***any*** relevant argument" that a movant relies on. *See* E.D.Mo. L.R. 4.01(A) (emphasis added). And

misrepresentation. *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 131–32 (Mo. 2010). Though it is not *inconceivable* that Plaintiffs could have been harmed by Lucco's misrepresentations after Nina Cook passed away, Plaintiffs have failed to allege sufficient facts supporting this element of fraud with respect to these misrepresentations. There are simply *no* factual allegations in Count II of the operative complaint that show how Plaintiffs suffered any injury because of these specific misrepresentations. *See generally* (Doc. 67) (offering no factual allegations indicating injury from Lucco's misrepresentations after Nina Cook had passed).

True, in their response to Lucco's motion to dismiss, and without citing to any allegations in the operative complaint, Plaintiffs say that these misrepresentations caused them "reliance [damages] and damage by foreclosing remedial action." (Doc. 73 at 6). But these are just legal conclusions in a brief, not factual allegations in a complaint. "To survive a motion to dismiss, a ***complaint*** must contain sufficient ***factual matter***, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (emphasis added). Because there are no "well-pleaded facts" in the operative complaint that "permit the court to infer more than the mere possibility" that Plaintiffs have suffered an injury from Lucco's misrepresentations after Nina Cook had passed, Plaintiffs fail to state a claim for relief based on these misrepresentations. *Id.*

This is a particularly glaring error given that Federal Rule of Civil Procedure 9(b) might require Plaintiffs to not only plead facts supporting this element of fraud, but plead them with ***particularity***. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake."); 5A C. Wright & Miller's Federal Practice & Procedure § 1297 (4th ed. 2026) ("The innumerable federal cases on the subject of alleging fraud suggest that it is prudent for the practicing lawyer to plead all of the elements of fraud and

---

considering arguments raised for the first time in a reply would be inconsistent with the principles of our adversarial system of justice by depriving the non-movant of a fair opportunity to respond. Thus, the Court will not consider this argument here.

to do so in some detail—whenever that is possible—even though some of them actually are not the 'circumstances' to which Rule 9(b) applies.").

Thus, Count II is dismissed as time-barred with respect to Plaintiffs' claims based on Lucco's financial advice given between 2000 and 2010 and dismissed for failure to state a claim with respect to Lucco's alleged misrepresentations after Nina Cook had passed.

### D. Counts III and IV are not barred.

Counts III and IV assert claims for negligent misrepresentation and breach of fiduciary duty (respectively) stemming from the same conduct as the claims in Counts I and II. (Doc. 67 at 12–15). Lucco argues that these claims too, to the extent they are based on financial advice given between 2000-2010 and the lapse of two insurance policies in 2016 and 2018, are barred by the applicable statute of limitations. (Doc. 72 at 10–11). The Court disagrees.

Under Mo. Rev. Stat. § 516.120(4), these claims are subject to a five-year limitations period. *See Chicago Title Ins. Co. v. Jackson, Brouillette, Pohl & Kirley, P.C.*, 930 S.W.2d 22, 24 (Mo. Ct. App. 1996) (citing Mo. Rev. Stat. § 516.120(4) as basis for five-year limitations period for negligent misrepresentation); *Klemme v. Best*, 941 S.W.2d 493, 497 (Mo. 1997) (breach of fiduciary duty claim "governed by the five-year limitations period of § 516.120(4)"). However, these claims do not accrue "when the wrong is done or the technical breach of … duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment." Mo. Rev. Stat. § 516.100. That is, these claims accrue "when a reasonable person would have been put on notice that an injury and substantial damages may have occurred and would have undertaken to ascertain the extent of the damages." *Powel v. Chaminade Coll. Preparatory, Inc.*, 197 S.W.3d 576, 584 (Mo. 2006). Thus, "the statute of limitations begins to run when the evidence was such to place a reasonably prudent person on notice of a potentially actionable injury." *Id.* at 582 (quotation omitted); *see also Weinbach v. Boeing Co.*, 6 F.4th 855, 857–58 (8th Cir. 2021) (quoting the same from *Powel*).

Here, Lucco says these claims accrued at the time of the purchases because Plaintiffs should have been aware of any damages as soon as the life insurance

10

policies were secured.  (Doc. 72 at 10).  That is so, he says, because Plaintiffs, with diligence, could have discovered that the policies' substantial premium payments were being paid from the Trust and fiduciary accounts.  (*Id.*).  If so, Lucco argues that the statute of limitations would have begun to run in 2015 at the latest—well outside the five-year limitations period.  (*Id.*).

But the allegations in the complaint plausibly show that these claims did not accrue until 2023—well within the five-year limitations period.  These claims are not based simply on the ***purchase*** of new insurance policies; they are based on the ***unsuitability*** of purchasing those new policies.  (Doc. 67 at ¶ 61) ("Lucco negligently misrepresented to Plaintiffs that the [insurance policies] he sold to them were suitable for a person of Nina Cook's age, health, needs, goals, and experience."); (*Id.* at ¶ 73 (Lucco "breached [his] fiduciary duty … by selling unsuitable life insurance policies").  Even if Plaintiffs could have discovered that premiums were being paid on new insurance policies, and the amount of those premiums, it is plausible that "a reasonably prudent person" in Plaintiffs position would ***not*** "be on notice of a potentially actionable injury" just by noticing the premiums being paid on the policies. *Powel*, 197 S.W.3d at 582.

Plaintiffs would not necessarily have reason to suspect that the policies were unsuitable just by knowing the premiums being paid.  Lucco is a professional financial advisor in which Plaintiffs placed "total trust."  (Doc. 67 at ¶¶ 5–8, 11–12).  He also "had complete control of all Plaintiffs' assets and orchestrated all premium payments for the Life Insurance Policies" and "controlled and directed" the account that paid the premiums. (Doc. 67 at ¶¶ 20–21, 25).  It is plausible that reasonably prudent clients of a financial advisor in these circumstances would not scrutinize controlled accounts just because premiums were being paid on life insurance policies.  Because the issue is not whether Plaintiffs could have discovered that life insurance policies had been purchased, but whether Plaintiffs were put on notice that ***unsuitable*** life insurance policies had been purchased, this claim survives a motion to dismiss.

The same is true for Plaintiffs' claims based on the lapse of insurance policies in 2016 and 2018.  Lucco argues that Plaintiffs could have uncovered that the policies

had lapsed by noticing that the premiums for those policies were no longer being paid. [cite]. But Plaintiffs allege that Lucco had "complete control" over the accounts that paid the premiums on the policies. (Doc. 67 at ¶¶ 20–21, 25). There is simply nothing on the face of the complaint that shows Plaintiffs had reason to scrutinize these controlled accounts in 2016 or 2018, or that they had some other reason to suspect that these two insurance policies had lapsed. Thus, it is plausible that a reasonably prudent person in the Plaintiffs' position would not have been put on notice that the insurance policies had lapsed in 2016 and 2018.

That so, neither Count III nor Count IV is dismissed as time-barred.

## II. Adequacy of Pleading

Lucco moves to dismiss Plaintiffs complaint for not sufficiently pleading the content of his purportedly fraudulent investment advice from 2000–2010. (Doc. 72 at 12, 15–16; Doc. 74 at 8–9). Because Plaintiffs' claims based on these allegations in Count I and II are time-barred, *see supra* part I.A.1. & I.B., the Court considers this issue only as it relates to Plaintiffs' claims in Counts III and IV.

### A. Count III

Count III is for negligent misrepresentation. (Doc. 67 at 12). So, unlike the claims in Counts I and II alleging fraud, the particularity pleading requirement of Federal Rule of Civil Procedure Rule 9(b) does not apply. Instead, this claim must satisfy only the typical pleading standard under Federal Rule of Civil Procedure 8(a)(2). *See Streambend Props. II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1013–14 (8th Cir. 2015) (negligent misrepresentation claim governed by Federal Rule of Civil Procedure 8(a), not Rule 9(b)).

Under Rule 8(a)(2), a pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quotation omitted). "When the particularity requirement of Rule 9(b) does not apply to a misrepresentation … claim," such as Count III, "the Rule 8(a)(2) standard … requires some attempt to show, 'What is the representation?

12

… Why is each representation false?  Where was each representation made?  Who made each representation?  When was each representation made?'" *Streambend*, 781 F.3d at 1014.

With respect to Count III, Plaintiffs' allegations concerning Lucco's financial advice are sufficiently pled under Federal Rule of Civil Procedure 8(a)(2).  Plaintiffs allege that Lucco sold six separate life insurance policies on the life of Nina Cook with millions of dollars in death benefits, earning him substantial commissions.  (Doc. 67 at ¶ 15).  In so doing, Plaintiffs allege Lucco negligently misrepresented on February 23, 2010, and March 21, 2010, that two policies he sold to Plaintiffs were suitable for a person of Nina Cook's age, health, needs, goals, and experience.  (*Id.* at ¶¶ 61, 20–21).  According to Plaintiffs, these policies were "unsuitable for Nina Cook based on her age, annual income, financial situation and needs, financial objectives, intended uses, existing assets, liquid net worth, and/or tax status."  (*Id.* at ¶ 25).  Why?  Because, Plaintiffs say:

> [u]niversal life insurance is initially cheaper but becomes more expensive each year as the cost of the life insurance is recalculated annually.  Buying new policies on the life of Nina Cook after selling earlier policies issued when she was younger on the secondary market or as replacement policies can only be seen as commission-generating recommendations that [were] unsuitable.

(*Id.*).  These allegations show who made the representations, what the representations were, when they were made, and why they were false.  Though not overly detailed, they give Lucco "fair notice of what the … claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.  That is sufficient under Rule 8(a)(2).

## B.  Count IV

The same is true for Count IV even though the higher Rule 9(b) standard applies.  Count IV asserts a breach of fiduciary duty claim that is subject to the heightened pleading standard under Federal Rule of Civil Procedure 9(b).  Rule 9(b) applies to Count IV because the heightened pleading requirement applies not only to fraud claims, but to claims that are "grounded in fraud[.]" *Streambend*, 781 F.3d 1003, 1010 (8th Cir. 2015).  Count IV is based on substantially similar conduct as the

intentional common law fraud claim in Count II, so Count IV's breach of fiduciary duty claim appears to be grounded in fraud. *Compare* (Doc. 67 at ¶¶ 72–77 *with* ¶¶ 50–56).

Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This means a plaintiff must plead "such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) (quotation omitted). Instead of just requiring "some attempt to show, 'What is the representation? … Why is [it] false? Where was [it] made? Who made [it]? [and] When was [it] made?,'" *Streambend*, 781 F.3d at 1014, Rule 9(b) requires the party *identify* the "who, what, where, when, and how" of the alleged fraud. *BJC Health Sys.,* 478 F.3d at 917.

The allegations in Count IV meet that mark. Plaintiffs allege Lucco breached his fiduciary duty to them by selling unsuitable life insurance policies, allowing the policies to lapse, purchasing new life insurance policies, and then generating addition commissions for himself. (Doc. 67 at ¶ 73). Plaintiffs allege the specific dates these insurance policies were purchased, (*id.* at ¶¶ 16–21), the specific dates that certain insurance policies lapsed, (*id.* at ¶¶ 20–21), and specifically why these insurance policies were unsuitable, (*id.* at ¶¶ 25–26).[6] Plaintiffs also detail how Lucco further breached his fiduciary duty by alleging that he concealed the lapses of insurance policies in various specific ways. (*Id.* at ¶¶ 27–31). Taken together, Plaintiffs allege their breach of fiduciary duty claim in Count IV with sufficient particularity to satisfy Rule 9(b). Nether Count III nor Count IV will be dismissed.

---

[6] Plaintiffs allege that the policies were unsuitable for a person of Nina Cook's age because "[u]niversal life insurance is initially cheaper but becomes more expensive each year as the cost of the life insurance is recalculated annually. Buying new policies on the life of Nina Cook after selling earlier policies issued when she was younger on the secondary market or as replacement policies can only be seen as commission-generating recommendations that [were] unsuitable." (Doc. 67 at ¶ 25).

14

### III. Standing

Finally, Lucco argues that Plaintiffs failed to allege facts establishing standing in their capacity as individuals because they have not specified in what capacity they were owners and beneficiaries of the life insurance policies. (Doc. 72 at 16).  But the Plaintiffs' operative complaint is clear: "Plaintiffs Cook and Hardy were owners of the Life Insurance Policies, meaning, among other things, that they had the power to sell the polices. They were also beneficiaries of the Life Insurance Policies."  (Doc. 67 at ¶ 23).  Nothing in the complaint suggests that Plaintiffs were only owners and beneficiaries in their capacity as trustees such that they lack standing as individuals.  And other allegations in the complaint clarify that Plaintiffs have standing to sue Lucco as individuals as well.  *See, e.g.,* (*Id.* at ¶ 6) (Lucco "served as financial adviser through Lucco Financial Partners, Inc., to Al Cook and Jenny Hardy, both ***individually*** and as co-Trustees of the Revocable Trust.") (emphasis added).  Thus, Lucco fails to show that Plaintiffs lack standing as individuals.

### Conclusion

**IT IS HEREBY ORDERED** that Lucco's motion to dismiss (Doc. 71) is **GRANTED in part** and **DENIED in part**.  Plaintiffs' claims in Count I with respect to Lucco's pre-March 27, 2020 conduct are **dismissed.**  Plaintiffs' claims in Count II with respect to Lucco's conduct between 2000–2010 and after Nina Cook's death are also **dismissed.**  All other relief requested in the motion to dismiss is **denied.**

**SO ORDERED,**

This 3rd day of August, 2026.

_Maria A. Lanahan_
MARIA A. LANAHAN
UNITED STATES DISTRICT JUDGE

15